**UNITES STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____ X

KEVIN HUGHES AND ALLISON          Plaintiffs                    **Docket No. 08-883**
HUGHES

**-against-**                                                   **SECOND AMENDED**
                                                                **COMPLAINT AND**
                                                                **DEMAND FOR JURY**
                                                                **TRIAL**

BANK OF AMERICA, N.A.                                           **TRIAL BY JURY**
SUCCESSOR BY MERGER TO FLEET
NATIONAL BANK and EXPERIAN
INFORMATION SOLUTIONS, INC.

                          **Defendants**
_____X

       The Plaintiffs are suing the Defendants because the Bank of America warned the Plaintiffs

that an identity thief was attempting to defraud the Plaintiffs, and then the bank enabled the thief to

do so. The Defendants then engaged in a three year campaign of abuse and harassment against the

Plaintiffs that included destroying the Plaintiffs otherwise impeccable credit, directing debt

collectors to harass the Plaintiffs, beginning one foreclosure against the Plaintiffs' home, and then

threatening  to sue the Plaintiffs a second time. The Defendant violated myriad federal consumer

protection statues as well as common law.


## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendants'

violations of the Fair Credit Reporting Act, 15 U.S.C 1681 et seq. (hereinafter "FCRA"); the

Truth in Lending Act, 15 USC § 1666 et seq. (hereinafter TILA); The Real Estate Settlement

Procedures Act 12 U.S.C. §2601 et. seq. (hereinafter, RESPA); and common law.


## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. Section 1681 (p); 15 U.S.C Section

1692k (d); 28 U.S.C Section 1367; 15 U.S.C. § 1640(e); 12 U.S.C. § 2614; and 28 U.S.C. §

1331; and supplemental jurisdiction exists for any state law claims pursuant to 28 U.S.C. Section

1367.  Additionally, the Court has jurisdiction based upon the provisions of 28 USC Sec. 1332 in

that there exists complete diversity of citizenship between the Plaintiffs and the defendants and

the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Plaintiffs also

seeks declaratory relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules

of Civil Procedure, and appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of

Civil Procedure in order to prevent irreparable harm. Declaratory and injunctive relief are also

available via New York State law. Venue in this District is proper in that Plaintiffs resides in this

District, the Defendant transacts business in this district, and the conduct complained of occurred

in this district.


## III. PARTIES

3. Plaintiffs Kevin Hughes is an adult resident citizen of Suffolk County, New York.

Kevin Hughes is a consumer as defined by the FDCPA. Kevin Hughes is a consumer as defined

by the FCRA. Plaintiffs entered into an open ended credit transaction with Bank of America

N.A. Successor By Merger to Fleet National Bank.

4. Plaintiffs Allison Hughes is an adult resident citizen of Suffolk County, New York. Allison Hughes is a consumer as defined by the FDCPA.  Allison Hughes is a consumer as defined by the FCRA. Plaintiffs entered into an open ended credit transaction with Bank of America N.A. Successor By Merger to Fleet National Bank.

5. Defendant Bank of America N.A. Successor By Merger to Fleet National Bank (hereinafter, BOA) is a banking corporation with its principal place of business in North Carolina.

6. BOA is a furnisher of information as contemplated by FCRA section 1681 s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

7. BOA makes and services numerous loans which are "federally related mortgage loans" as defined in 12 U.S.C. §2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" which make or invest in residential real estate loans aggregating more than $1,000,000 per year.

8. At all times relevant hereto, in the ordinary course of its business, BOA regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, making this Defendant a creditor within the meaning of the Act, 15 U.S.C. § 1602(f) and Regulation Z, 12 C.F.R. § 226.2(a)(17).

9.  Defendant Experian Information Solutions, Inc. is an Ohio corporation authorized and

registered to do business in the State of New York. Experian is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. Section 1681a (f).

10. The phrase "credit report" as used herein is meant to refer to "consumer report" as defined under the FCRA.

11. The phrase consumer reporting agency or CRA as used herein is meant to refer to a consumer reporting agency as defined by the FCRA.

12. Plaintiffs' causes of action accrued, in part, in Suffolk County, New York.

## IV. FACTUAL BACKGROUND

13. Plaintiffs jointly entered into a Home Equity Line of Credit (HELOC) with BOA. Said HELOC is an open ended credit transaction. Plaintiffs also have various joint checking and joint savings accounts with BOA. When opening said accounts Plaintiffs were obligated to disclose to BOA certain personal identification information. BOA warranted and represented to Plaintiffs that they would safeguard and keep private Plaintiffs' personal identification information, and Plaintiffs' financial information. On information and belief, BOA violated said warranties and representations and permitted an unknown third party or parties to obtain Plaintiffs' personal identification information and Plaintiffs' financial information.

14. Plaintiffs have now, and have always lived on Long Island, New York. All of Plaintiffs' BOA accounts were opened on Long Island, New York, and Plaintiffs have never had any business or personal affairs in the State of Massachusetts.

15. On or about November 9, 2005, Plaintiffs received a telephone call from Defendant BOA. Plaintiffs returned the call and was informed by the representative at BOA that a suspected ID

thief had used Plaintiffs' personal identification information and opened a checking account with BOA in the name of Allison Hughes in the State of Massachusetts. BOA wanted to confirm with Plaintiffs that the new account was indeed fraudulent. Plaintiffs confirmed BOA's suspicions. Plaintiffs were informed by BOA that Plaintiffs' accounts were safe.  Seeking further assurances that Plaintiffs' accounts were safe, on or about November 10, 2005 Plaintiffs spoke with additional BOA representatives and confirmed that the Plaintiffs' accounts were safe. Plaintiffs relied upon said representations from the BOA representatives.

16.  BOA permitted an unauthorized third party to use the personal identification information of Kevin Hughes to open a fraudulent checking account (the "fraud account").  The fraud account was listed in the name of Plaintiff Kevin Hughes with all of Kevin Hughes' personal identification information.  The address associated with the fraud account was located in Massachusetts.  BOA then sent a bank card with the name of Kevin Hughes to the Massachusetts address. BOA then permitted the third party to link the fraud account to the Plaintiffs' HELOC account. BOA then granted the third party the ability to continuously access and use the Plaintiffs' HELOC account via computer and/or telephone. On or about November 13, 2005 BOA then permitted the third party to charge $9,500.00 onto Plaintiffs' HELOC account, and to transfer said $9,500.00 into the fraud account. The third party used either a telephone or computer to make the $9,500.00 charge and transfer. The third party then withdrew money from the fraud account using the bank card that BOA had mailed to the Massachusetts address.

17. On or about November 15, 2005 Plaintiffs learned about the unauthorized $9,500.00 transaction. Plaintiffs spoke with representatives at BOA on November 15, 2005 and confirmed that the $9,500.00 transaction was unauthorized and requested that the HELOC account be corrected.

Plaintiffs never received written acknowledgement from BOA that Plaintiffs had reported an unauthorized use of the HELOC account. Plaintiffs never received written results of BOA's investigation into the Plaintiffs' report of the unauthorized use of the HELOC account.

18. Between November 16, 2005 and December 15, 2005 Plaintiffs spoke to BOA numerous times and confirmed that the $9,500.00 transaction was unauthorized and requested that the HELOC be corrected. BOA acknowledged to Plaintiffs that the $9,500.00 transaction was unauthorized, but did not correct the account. Plaintiffs never received written acknowledgement from BOA that Plaintiffs had reported an unauthorized use of the HELOC account. Plaintiffs never received written results of BOA's investigation into the Plaintiffs' report of the unauthorized use of the HELOC account.

19. In or around the middle of December 2005 BOA sent Plaintiffs their monthly billing statement for the HELOC account. Such statement showed the $9,500.00 fraudulent transfer on November 10, 2005.  Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction.  Said statement did not indicate that that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

20. On or about December 15, 2008 Plaintiffs hired Attorney James Quinn to assist them in forcing BOA to comply with the law. Plaintiffs paid money to Attorney Quinn for said representation.

21. On or about December 19, 2005 Attorney James Quinn sent BOA a letter further notifying BOA of unauthorized $9,500.000 transaction, and demanding redress. BOA did not reply to said letter.  BOA did not correct the HELOC account. Neither Plaintiffs, nor their counsel, ever

receive written acknowledgement from BOA that Plaintiffs reported an unauthorized use of the HELOC account. Neither Plaintiffs, nor their counsel, ever received written results of BOA's investigation into the Plaintiffs' report of the unauthorized use of the HELOC account.

22. On or about December 28, 2005 Attorney James Quinn sent BOA a letter further notifying BOA of the unauthorized transfer and demanding redress. BOA did not reply to said letter. BOA did not correct the HELOC account. Neither Plaintiffs, nor their counsel, ever received written acknowledgement from BOA that Plaintiffs reported an unauthorized use of the HELOC account. Neither Plaintiffs, nor their counsel, ever received written results of BOA's investigation into the Plaintiffs' report of the unauthorized use of the HELOC account.

23. In or around the middle of January 2006, Plaintiffs received the monthly account statement for the HELOC loan. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

24. In or around February 2006 BOA began reporting to the credit reporting agencies Trans Union, Equifax, and Experian, (the CRA's) that the Plaintiffs were delinquent in the payment of their HELOC account. BOA began reporting to the CRA's that Plaintiffs owed the $9,500.00 to BOA plus interest.   BOA did not report to any of the Credit Reporting Agencies that the Plaintiffs disputed the fraudulent transfer.

25. In or around the middle of February 2006, Plaintiffs received their monthly account statement for the HELOC loan. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that that the

Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

26. In or around the middle of March 2006, Plaintiffs received their monthly account statement for the HELOC loan. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

27. On or about March 17, 2006 Attorney James Quinn sent BOA a letter further notifying BOA of the unauthorized transfer and demanding redress. BOA did not reply to said letter. BOA did not correct the HELOC account. Neither Plaintiffs, nor their counsel, ever received written acknowledgement from BOA that Plaintiffs reported an unauthorized use of the HELOC account. Neither Plaintiffs, nor their counsel, ever received written results of BOA's investigation into the Plaintiffs' report of the unauthorized use of the HELOC account.

28. The Plaintiffs did not receive another monthly HELOC statement from BOA until December 2006. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

29. In or around the middle of January 2007, Plaintiffs received the monthly account statement for the HELOC loan. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed

portion of the HELOC balance from the undisputed portion of the HELOC balance.

30. In or around the middle of February 2007, Plaintiffs received the monthly account statement for the HELOC loan. Said statement indicated that Plaintiffs were responsible for the payment of the unauthorized $9,500.00 transaction. Said statement did not indicate that that the Plaintiffs disputed the unauthorized use of the HELOC account. Said statement did not segregate the disputed portion of the HELOC balance from the undisputed portion of the HELOC balance.

31. At numerous times throughout 2006 and 2007 BOA reported that Plaintiffs were delinquent in the payment of the HELOC loan.

32. In March 2007 BOA began to report to the credit reporting agencies Trans Union, Experian, and Equifax (the CRA's) that the Plaintiffs owed a second HELOC loan to BOA with a outstanding balance of  in the amount of $89,844.00.  Additionally, BOA failed to delete or correct the reporting of the original HELOC loan. As such, BOA was reporting that Plaintiffs owed two different HELOC loans; one indicating that the Plaintiffs' owe the fraudulent $9,500.00 transaction plus interest, and one indicating that Plaintiffs do not.  Defendant BOA never reported to the CRA's that Plaintiffs disputed the fraudulent $9,500.00 charge.  The sum of BOA's reporting falsely indicated that Plaintiffs owed a total of $193,371.00 to the BOA for two different HELOC loans.

33. On or about March 7, 2007, BOA began foreclosure proceedings against the Plaintiffs home based upon the original HELOC promissory note and mortgage. BOA hired Attorney Steven L. Baum, PC to foreclose on the Plaintiffs' home BOA also filed a Notice of Pendency (Lis Pendins) against the Plaintiffs' residence.

34. BOA served the foreclosure documents upon the Plaintiffs. The foreclosure

documents indicate that the Plaintiffs were going to have their house taken away from them.

35. The Summons and Complaint in the foreclosure action contains false statements.

36. The Summons and Complaint in the foreclosure action indicates that Plaintiffs owes the unauthorized $9,500.00 transaction plus interest to BOA.

37. The unauthorized third party who opened the fraudulent checking account in the name of Kevin Hughes did not pay overdraft fees associated with said fraud account.

38. BOA retained the services of a debt collector called NCO Financial Services, Inc. to attempt to collect overdraft fees from the fraudulent checking account from the Plaintiffs Kevin Hughes.

39. On or about October 17, 2007 Plaintiffs Kevin Hughes spoke with a representative of Defendant NCO and informed NCO that he did not owe the alleged debt relating to the fraud account. Plaintiffs informed NCO that he was represented by an attorney.

40. Notwithstanding their knowledge of fraud, on or about October 22, 2007 NCO contacted the Plaintiffs Kevin Hughes in an attempt to collect the debt.

41. Notwithstanding their knowledge of the fraud, on or about October 23, 2007 NCO contacted the Plaintiffs Kevin Hughes in an attempt to collect the debt.

42. Notwithstanding their knowledge of the fraud, on or about December18, 2007 NCO contacted the Plaintiffs Kevin Hughes in an attempt to collect a debt.


**NOVEMBER 2007**

*Allison Hughes' November 2007 Dispute*

43. In November 2007, BOA was reporting to the Credit Reporting Agencies Trans Union,

Equifax, and Experian that the Plaintiff Allison Hughes owed the fraudulent $9,500.00 charge. BOA was also reporting that Plaintiffs had been delinquent on the payment of the original HELOC loan on numerous occasions. Defendant was also reporting that Plaintiffs were at that time delinquent on the payment of $2,362.00 on the HELOC loan. BOA was also reporting that the Plaintiff owed two different HELOC loans to BOA. Plaintiff Allison Hughes disputed the erroneous credit information that BOA was reporting to the credit reporting agencies Equifax, Experian, and Trans Union. Plaintiffs forwarded such disputes to each of the credit reporting agencies, each of who forwarded the disputes to BOA.

44. In or around the end of November 2007 BOA "verified" to Equifax that the erroneous credit information was correct, resulting in Equifax keeping the erroneous information on Allison Hughes' credit report. BOA did not inform Equifax that Allison Hughes disputed the credit information BOA was reporting.

45. In or around December 1, 2007, BOA "verified" to Experian that the erroneous credit information was correct, resulting in Experian keeping the erroneous information on Allison Hughes' credit report. BOA did not inform Experian that Alison Hughes disputed the credit information  BOA was reporting.

46. Experian failed to perform a reasonable investigation of the Plaintiffs' disputes of the erroneously reported credit information relating to BOA appearing on Plaintiffs' Experian credit report.

47. In or around the end of November 2007 BOA "verified" to Trans Union that the erroneous credit information was correct, resulting in Trans Union keeping the erroneous information on Alison Hughes' credit report. BOA did not inform Trans Union that Allison Hughes

disputed the credit information BOA was reporting

### *Kevin Hughes' November 2007 Dispute*

48. In November 2007, BOA was reporting to the Credit Reporting Agencies Trans Union, Equifax, and Experian that the Plaintiff Kevin Hughes owed the fraudulent $9,500.00 charge. BOA was also reporting that Plaintiffs had been delinquent on the payment of the original HELOC loan on several different occasions. Defendant was also reporting that Plaintiffs were at that time delinquent on the payment of $2,362.00 on the HELOC loan. BOA was also reporting that the Plaintiff owed two different HELOC loans to BOA. Plaintiffs Kevin Hughes disputed the erroneous credit information that BOA was reporting to the credit reporting agencies Equifax, Experian, and Trans Union. Plaintiffs Kevin Hughes forwarded such disputes to each of the credit reporting agencies, each of who, forwarded Kevin Hughes' dispute to BOA.

49. In or around the end of November 2007 BOA "verified" to Equifax that the erroneous credit information was correct, resulting in Equifax keeping the erroneous information on Kevin Hughes' credit report. BOA did not inform Equifax that Kevin Hughes disputed the credit information BOA was reporting.

50. In or around December 1, 2007, BOA "verified" to Experian that the erroneous credit information was correct, resulting in Experian keeping the erroneous information on Kevin Hughes' credit report. BOA did not inform Experian that Kevin Hughes disputed the credit information BOA was reporting.

51. Experian failed to perform a reasonable investigation of the Plaintiffs' disputes of the

erroneously reported credit information relating to BOA appearing on Plaintiffs' Experian credit report.

52. In or around the end of November 2007 BOA "verified" to Trans Union that the erroneous credit information was correct, resulting in Trans Union keeping the erroneous information on Kevin Hughes' credit report. BOA did not inform Trans Union that Kevin Hughes disputed the credit information BOA was reporting.


**MARCH 2008**

*Allison Hughes' March 2008 Dispute*

53. In March 2008, BOA was reporting to the Credit Reporting Agencies Trans Union, Equifax, and Experian that the Plaintiffs owed the fraudulent $9,500.00 charge. BOA was also reporting that Plaintiffs had been delinquent on the payment of the original HELOC loan on several different occasions. BOA was also reporting that the Plaintiff owed two different HELOC loans to BOA. Defendant was also reporting that Plaintiffs were at that time delinquent on the payment of $2,362.00 on the original HELOC loan.

54 .On or about March 1, 2008, Plaintiff Alison Hughes disputed the erroneous credit information that BOA was reporting to the credit reporting agencies Equifax, Experian, and Trans Union.  Allison Hughes forwarded such disputes to each of the credit reporting agencies.

55. Upon receipt of the Plaintiff Allison Hughes' March 1, 2008 dispute letter Equifax contacted BOA and requested that BOA investigate the dispute.  In response, BOA informed Equifax that the credit information that BOA had been reporting to Equifax was inaccurate. BOA informed Equifax that the Plaintiffs did not owe the $9,500.00 charge.  BOA informed  Equifax that

balance on the HELOC account was zero. BOA informed Equifax that the Plaintiffs were not currently delinquent in the amount of $2,362.00. BOA continued to falsely report to Equifax that the Plaintiffs had been delinquent in the payment of the original HELOC on several occasions. The Defendant BOA did not inform Equifax that the Plaintiffs disputed the fraudulent $9,500.00 charge.

56. Upon receipt of Plaintiff Allison Hughes' March 1, 2008 dispute letter, Trans Union contacted BOA and requested that BOA investigate the dispute. In response, BOA "verified" to Trans Union that all the erroneous credit information was correct, resulting in Trans Union keeping the erroneous information on Allison Hughes' credit report.  BOA did not inform Trans Union that Allison Hughes disputed the credit information BOA was reporting.

57. On information and belief, upon receipt of Plaintiff Allison Hughes' March 1, 2008 dispute letter, Experian contacted BOA and requested that BOA investigate the dispute. In response, on information and belief, BOA "verified" to Experian that all the erroneous credit information was correct, resulting in Experian keeping the erroneous information on Allison Hughes' credit report. BOA did not inform Experian that Allison Hughes disputed the credit information BOA was reporting.

58. Experian failed to perform a reasonable investigation of the Plaintiffs' disputes of the erroneously reported credit information relating to BOA appearing on Plaintiffs' Experian credit report.

*Kevin Hughes' March 2008 Dispute*

59 On or about March 1, 2008, Plaintiff Kevin Hughes disputed the erroneous credit information that BOA was reporting to the credit reporting agencies Equifax, Experian, and Trans

Union.  Kevin Hughes forwarded such disputes to each of the credit reporting agencies.

60.  Upon receipt of the Plaintiffs' March 1, 2008 dispute letters from Kevin Hughes, Equifax contacted BOA and requested that BOA investigate the dispute.  In response, BOA informed Equifax that the credit information that BOA had been reporting to Equifax was inaccurate. BOA informed Equifax that the Plaintiffs did not owe the $9,500.00 charge.  BOA informed Equifax that the balance on the original HELOC account was zero. BOA informed Equifax that the Plaintiffs were not currently delinquent in the amount of $2,362.00. BOA continued to falsely report to Equifax that the Plaintiffs had been delinquent in the payment of the original HELOC on several occasions. The Defendant BOA did not inform Equifax that the Plaintiffs disputed the fraudulent $9,500.00 charge.

61. Upon receipt of the Plaintiffs' March 1, 2008 dispute letters from Kevin Hughes, Trans Union contacted BOA and requested that BOA investigate the dispute.  In response, BOA "verified" to Trans Union that all the erroneous credit information was correct, resulting in Trans Union keeping the erroneous information on Kevin Hughes' credit report. BOA did not inform Trans Union that Kevin Hughes disputed the credit information BOA was reporting.

62. Upon receipt of the Plaintiffs' March 1, 2008 dispute letters from Kevin Hughes, Experian contacted BOA and requested that BOA investigate the dispute. On information and belief, in March 2008, the original HELOC account was deleted entirely from Kevin Hughes' Experian credit profile.

**July 2008 through May 2009**

63. Notwithstanding the instant litigation, in July 2008 BOA again reported to the credit reporting agency Experian that Plaintiff Allison Hughes owed the fraudulent $9,500.00 charge.  In

July 2008 BOA also reported that Allison Hughes had been delinquent on the payment of the original HELOC loan on several different occasions. Defendant also reported that Allison Hughes was at that time delinquent on the payment of $2,362.00 on the original HELOC loan. BOA also reported to Experian that the Plaintiff owed two different HELOC loans to BOA with a combined balance of exceeding $190,000.00.  BOA did not report that Allison Hughes disputed any of this information.

64.  In October 2008, American Express decreased the available credit on Allison Hughes' American Express credit card substantially due to the false information that BOA was reporting about Allison Hughes' to Experian.

65.  On or about November 18, 2008, Plaintiff Allison Hughes disputed the erroneous credit information that BOA was reporting to the credit reporting agencies Experian. Allison Hughes forwarded such dispute to Experian. Allison Hughes also forwarded a copy of the November 18, 2008 dispute letter directly to BOA.  Experian refused to investigate such dispute, and the false and derogatory credit information related to BOA remained on Allison Hughes' credit profile with Experian. BOA did not respond to Plaintiff's November 18, 2008 letter and did not correct or remove the false and derogatory credit information.

66. On numerous occasions in October 2008 through December 2008, the Defendant BOA through their agents, threatened to sue the Plaintiffs again based upon the original HELOC loan.

67. In April 2009, American Express again decreased the available credit on Allison Hughes' American Express credit card substantially due to the false information that BOA was reporting about Allison Hughes' to Experian.

68. As of May 2009, the false and derogatory credit information continues to appear on Allison Hughes' Experian credit profile. BOA has failed to correct such false and derogatory information. Allison Hughes' Experian credit profiles continues to indicate that Allison Hughes owes over $190,000.00 to BOA, and that Allison Hughes is responsible for the fraudulent $9,500.00 charge.

69. Following the Defendants' failure to properly investigate Plaintiffs' disputes, and the Defendants' failure to correct the false and derogatory credit information appearing on the Plaintiffs' Trans Union, Experian, and Equifax credit reports, the Plaintiffs were denied credit substantially due to Defendants' erroneous and illegal credit reporting.

## V. CAUSES OF ACTION UNDER THE FAIR CREDIT REPORTING ACT

70. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

71. Defendants BOA furnish credit information to the national credit reporting agencies and thus have duties under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

72. Upon receipt of Plaintiffs' disputes to Trans Union, Equifax, and Experian, Defendant BOA, were under a duty to perform a reasonable investigation with respect to the disputed information pursuant to 15 U.S.C. § 1681s-2(a) and 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act. Defendant BOA failed to perform a reasonable investigation of the Plaintiffs' dispute as required by 15 U.S.C. § 1681s-2(a) and 15 U.S.C. § 1681s-2(b) and their subdivisions. and "verified" to Trans Union, Equifax, and Experian that the erroneous credit information should continue to appear in the Plaintiffs' credit file.  BOA's actions as alleged herein constitute a

negligent and/or willful violation of the Fair Credit Reporting Act.

73. 15 U.S.C. § 1681i requires Defendant Experian to perform a reasonable investigation of the Plaintiffs' disputes of the erroneously reported credit information relating to BOA appearing on Plaintiffs' Experian credit report. Experian negligently and/or willfully violated 15 U.S.C. § 1681i by failing to reasonably investigate the Plaintiffs' disputes.

74. 15 U.S.C. § 1681e(b) requires Defendant Experian to maintain reasonable procedures to assure maximum possible accuracy of the Plaintiffs' credit history. Defendant Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to assure maximum possible accuracy of the Plaintiffs' credit history.

75. Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, the Defendants' actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiffs to recovery of their actual damages as well as attorneys' fees and costs. In addition, the Defendants' actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiffs to the recovery of actual damages, statutory damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

## VI. CAUSES OF ACTION UNDER THE TRUTH IN LENDING ACT

76. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

77. Within 60 days of the unauthorized use of the Plaintiffs HELOC, the Plaintiffs informed BOA numerous times that the fraudulent $9,500.00 transaction was not authorized. Plaintiffs notified BOA of the account number; account name; disputed amount; and the nature of the dispute.

78. BOA did not, within two complete billing cycles after receipt of Plaintiffs' dispute, credit the Plaintiffs' HELOC account for the unauthorized use of the said account. Said failure violates 15 USC 1666(a).

79. BOA did not send a written acknowledgement within 30 days of receiving Plaintiffs' dispute in violation of Regulation Z, 12 CFR Section 226.13(c)(1).

80. BOA did not properly conduct a reasonable investigation into the unauthorized transfer. Regulation Z, 12 CFR Section 223.13(f).

81. BOA did not send correct billing statements that segregated out the unauthorized transfer, in violation of 15 USC 1666(c), and Regulation Z, 12 CFR 226.13 note 30.

82. BOA did not send billing statements that indicated the proper outstanding balance owed by the Plaintiffs in violation of 15 USC 1637(b) and Regulation Z, 12 CFR Section 226.7.

83. Despite their knowledge of the unauthorized use of the HELOC account, BOA continued to attempt to collect the disputed $9,500.00. Said conduct violates 15 USC 1666 (c), and 15 USC 1643(a)&(d).

84. Despite their knowledge of the unauthorized use, BOA reported to the credit reporting agencies that the Plaintiffs owed and continues to owe the unauthorized $9,500.00 transaction, and that Plaintiffs were and remain delinquent in the payment of such. Said conduct violates 15 USC 1666a, and 15 USC 1643(a)&(d).


## VII. CAUSES OF ACTION UNDER RESPA

85. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

86.  Plaintiffs' attorney sent a qualified written request, as defined by 12 USC 2605(e)(1),

to BOA on December 19, 2005. BOA did not respond appropriately to said request within 60 days as required by 12 USC 2605(e)(2).

87. Plaintiffs' attorney sent a qualified written request, as defined by 12 USC 2605(e)(1), to BOA on December 28, 2005. BOA did not respond appropriately to said request within 60 days as required by 12 USC 2605(e)(2).

88.  Plaintiffs' attorney sent a qualified written request, as defined by 12 USC 2605(e)(1), to BOA on March 13, 2006. BOA did not respond appropriately to said request within 60 days as required by 12 USC 2605(e)(2).

89. BOA failed to correct Plaintiffs' accounts in violation of 12 U.S.C. §2605(e)(2) and 24 C.F.R. §3500.21(e)(3) (1996).

90.  BOA reported to credit reporting agencies that the Plaintiffs were overdue and delinquent in the payment of the HELOC, in violation of U.S.C. §2605(e)(4)(i).

91. BOA refused to cease its collection efforts after receiving qualified written requests, in violation of 12 U.S.C. §2605(e) (2).

92.  BOA failed to conduct an appropriate investigation after receiving qualified written request letters violation of 12 U.S.C. §2605(e) (2).

## VIII. BREACH OF FIDUCIARY DUTY

93. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

94. The actions and omissions of BOA as described herein constitute a breach of BOA's fiduciary duty to the Plaintiffs.

95. Plaintiffs reposed trust and confidence in BOA by disclosing to BOA personal identifying information. BOA assured Plaintiffs of the security of Plaintiffs' personal information and financial information, and Plaintiffs relied upon such representations. BOA was specifically aware of the threat to Plaintiffs' personal and financial information and failed to safeguard such. BOA instructed Plaintiffs that Plaintiffs accounts were safe notwithstanding the known threats. Plaintiffs relied on such representations, and Plaintiffs were damaged due to BOA's actions and omissions.

96. BOA's breach of their fiduciary duty proximately caused damages to the Plaintiffs as further described herein. Plaintiffs request punitive damages for BOA's breach of fiduciary duty as described in this complaint.

## IX. DEFAMATION

97. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

98. BOA maliciously published false and defamatory statements about Plaintiffs in that, within one year of the filing of this action, BOA first reported to Trans Union, Experian, and Equifax that Plaintiffs owed $190,664.00 to BOA. In March 2007, BOA first reported to Trans Union, Experian, and Equifax that Plaintiffs owed "$88,467" to BOA. BOA reported such information while BOA was also reporting that Plaintiffs still owed $103,527" to BOA for the original HELOC loan. BOA knew that this information was false when they reported such.

99. BOA maliciously published false and defamatory statements about Allison Hughes in that, in July 2008 BOA first reported to Experian that Plaintiff Allison Hughes owed $191,751" to BOA. In July 2008 BOA first reported to Experian that Allison Hughes owed $88,224" to BOA. BOA reported such information while BOA was also reporting that Allison Hughes still

owed $103,527" to BOA for the original HELOC loan. BOA knew that this information was false when they reported such.

100. Between March 2007 and May 2009 BOA has periodically reported to the credit reporting agencies Experian, Trans Union, and Equifax that Plaintiffs owed the fraudulent $9,500.00 charge.  BOA also reported that Plaintiffs had been delinquent on the payment of the original HELOC loan on several different occasions. Defendant also reported that Plaintiffs were delinquent on the payment of $2,362.00 on the original HELOC loan. BOA also reported that the Plaintiffs owed two different HELOC loans to BOA with a combined balance of exceeding $190,000.00. BOA did not report that Plaintiffs disputed any of this information.

101. BOA's false statements inherently label Plaintiffs a bad credit risk.

102. BOA's false statements are defamatory on their face, and constitute libel per se.

103. BOA's  false statements are defamatory and constitute libel.

104. BOA does not have just cause or excuse for such defamatory statements.

105.  BOA knew or should have known that their statements were false. BOA's statements were done with malice.

106. BOA reported the false information with knowledge that it was false and/or with reckless disregard of whether it was false or not.

107. BOA's false statements are injurious to the Plaintiffs' reputation, esteem and good will.  Along with other damages, Defendants' false statements caused the Plaintiffs to lose opportunities to obtain credit upon the most favorable terms. Along with other damages as further alleged herein, Defendants' false statements also caused the Plaintiffs to suffer emotional distress. Defendant was also forced to spend money to retain an attorney to attempt to force BOA

to comply with law.  Plaintiffs seeks compensation for such in an amount to be determined upon the trial of this action.

## X. NEGLIGENCE AND GROSS NEGLIGENCE

108. Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

109. The actions and omissions of BOA as described herein constitute negligence in that BOA owed Plaintiffs a duty and a special duty: to properly secure and manage Plaintiffs' personal identification and financial information; to properly account for Plaintiffs' monies; to properly report credit information relating to the Plaintiffs;  and to properly address any unauthorized use of Plaintiffs' accounts and/or information. Said duties were breached, and said breach was the proximate cause of damages suffered by Plaintiffs.

110. The actions and omissions of BOA as described herein constitute gross negligence in that BOA owed Plaintiffs a duty and a special duty: to properly secure and manage Plaintiffs' personal identification and financial information; to properly account for Plaintiffs' monies; to properly  report credit information relating to the Plaintiffs; and to properly address any unauthorized use of Plaintiffs' accounts and/or information. Said duties were breached, and said breach was the proximate cause of damages suffered by Plaintiffs. Additionally, BOA's actions and omissions as described herein demonstrate a want of scant care and an indifference to the rights of Plaintiffs.

## XI. NEGLIGENCE AND GROSS NEGLIGENCE IN THE HIRING, RETENTION, TRAINING, AND/OR SUPERVISION

Page 23

111.  Plaintiffs repeats the foregoing paragraphs as if fully restated herein.

112. Defendant BOA was negligent in the hiring, retention, training, and/or supervision of its employees. BOA's actions and omissions as described herein constitute negligence in that BOA owed Plaintiffs a duty and a special duty to hire, retain, train, and/or supervise its employees properly, said duties were breached, and said breaches were the proximate cause of damages suffered by Plaintiffs.

113. Defendant BOA was negligent in the hiring, retention, training, and/or supervision of its employees. BOA's actions and omissions as described herein constitute negligence in that BOA owed Plaintiffs a duty and a special duty to hire, retain, train, and/or supervise its employees properly, said duties were breached, and said breaches were the proximate cause of damages suffered by Plaintiffs. Additionally, the actions and omissions of BOA demonstrate a want of scant care and an indifference to the rights of Plaintiffs. The actions of Defendants were willful, malicious, and wanton. The actions of Defendants were highly unreasonable and demonstrate an extreme departure from ordinary care.

## XII. DAMAGES.

114. Because of the acts and omissions of Defendants as herein described, the Plaintiffs KEVIN HUGHES has suffered, amongst other damages,  financial loss, denials of credit, loss of credit, physical injury, physical pain, medical bills, mental anxiety, emotional suffering, worry, humiliation, sleeplessness, mental distress, pre-litigation costs, and pre-litigation attorney's fees.  In addition, the Plaintiffs have incurred and will continue to incur litigation expenses and litigation attorneys' fees which, but for the acts and omissions of Defendants alleged herein, would not have

been necessary.  Further, Defendants' acts and omissions are willful, malicious and demonstrative of a reckless disregard for the Plaintiffs' rights and well being.

115.  As a result of Defendants' willful violations of 15 U.S.C. § 1681 et seq. their malicious defamations of the Plaintiffs' good name; their grossly negligent conduct, and their breach of fiduciary duty, the Plaintiffs is entitled to punitive damages from Defendants.

116. Because of the acts and omissions of Defendants as herein described, the Plaintiffs ALISON HUGHES has suffered, amongst other damages, financial loss, denials of credit, loss of credit, physical pain,  mental anxiety, emotional suffering, worry, humiliation, sleeplessness, mental distress, pre-litigation costs, and pre-litigation attorney's fees.   In addition, the Plaintiffs have incurred and will continue to incur litigation expenses and litigation attorneys' fees which, but for the acts and omissions of Defendants alleged herein, would not have been necessary.  Further, Defendants' acts and omissions are willful, malicious and demonstrative of a reckless disregard for the Plaintiffs' rights and well being.

117. As a result of Defendants' willful violations of 15 U.S.C. § 1681 et seq. their malicious defamations of the Plaintiffs' good name; their grossly negligent conduct, and their breach of fiduciary duty, the Plaintiffs is entitled to punitive damages from Defendants

**WHEREFORE,** Plaintiffs respectfully requests that judgment be entered against Defendants, for the following relief, together with interests, costs, and disbursements of this action:

## UNDER RESPA

(1)      Declare that the subject loan was never in default or delinquent by reason of any

conduct of the Plaintiffs, and that the subject loan be reinstated by BOA for an amount that in no way penalizes the Plaintiffs for BOA's acts and omissions;

      (2)     Enjoin BOA from foreclosing on the subject loan;

      (3)     Award the Plaintiffs actual and punitive damages for BOA's violations of RESPA;

      (4)     Award the Plaintiffs additional damages for BOA's pattern and practice of noncompliance with RESPA, in the amount of $1,000.00 per violation;

      (5)     Award Plaintiffs attorneys' fees and costs under RESPA;

### UNDER TILA

      (6) Enjoin BOA, or affiliated companies from attempting to collect the unauthorized transfer

      (7) Enjoin BOA, or affiliated companies from reporting any negative credit information to any third party about Plaintiffs' HELOC loan until BOA fully complies with its TILA;

      (8)  Award Maximum statutory damages

      (9)  Award Actual damages

      (10) Award Punitive damages

      (11) Award Plaintiffs her costs, expenses, and reasonable attorney's fees

### UNDER FCRA

      (12) Award Actual damages

      (13) Award Statutory damages under the FCRA;

(14) Award Punitive damages under the FCRA

(15) Award Costs and reasonable attorney's fees under the FCRA


**UNDER COMMON LAW CLAIMS**

(16) General damages

(17) Special damages;

(18) Actual damages;

(19)  Nominal damages;

(20) Punitive damages;

Respectfully submitted,


KEVIN MALLON
JAMIE FISHMAN
FISHMAN & NEIL, LLP
305 Broadway, Suite 900
New York, NY  10007
(212) 897-5840


**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs demands trial by jury in this action.

S//

Attorney for Plaintiffs

Page 27